## IN THE COUNTY COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR BREVARD COUNTY, FLORIDA
## SMALL CLAIMS DIVISION

**BELINDA IGLESIAS,**

     *Plaintiff,*

     v.

**EXPERIAN INFORMATION
SOLUTIONS, INC.,**

     *Defendant.*

Case Number:

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Belinda Iglesias ("Ms. Iglesias"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Experian Information Solutions, Inc. ("Experian"), stating as following:

## PRELIMINARY STATEMENT

1.      This is an action for damages, not greater than $8,000, exclusive of attorneys' fees and costs, brought by Ms. Iglesias against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and § 34.01, Fla. Stat.

3.      Experian is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.      Venue is proper in Brevard County, Florida, because the acts complained of were committed and / or caused by the Defendant within Brevard County.

## PARTIES

5.      Ms. Iglesias is a natural person residing in the city of Titusville, Brevard County, Florida.

6.      Ms. Iglesias is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Experian is an Ohio corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8.      Experian is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

9.      Experian is a nationwide Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Experian's Systems Cause Accounts To Report "NO STATUS"

10.     Since at least 2002 – and likely since last century – Experian's automated systems have contained an unaddressed, systemic programming glitch: when data furnishers update reported information to a competing CRA to indicate account information is disputed by the consumer, and then send Experian a carbon-copy of the update, Experian's systems fail to process

the update correctly, resulting in almost all information in the tradeline being removed – including the current payment status of the account.

11.     In some instances, responding to a consumer dispute directly to Experian results in the identical glitch occurring.

12.     As a result in either scenario, the tradeline then displays on a report *sans* any real information – the type of account, payment terms, reported balance, credit limit, monthly payment, recent payment amount, are deleted by Experian's systems, resulting in values of "NA" (not applicable) or "not reported" populating as defaults.

13.     The payment status, having been wiped clean by Experian's glitch, then defaults to "NO STATUS" since no payment status remains.

14.     Experian's systems also erroneously insert a Compliance Condition Code ("CCC") of "XF," or "account in dispute under Fair Credit Billing Act" even though this CCC was not inserted or reported by the data furnisher.

15.     The Fair Credit Billing Act ("FCBA") was enacted in 1974 as an amendment to the Truth in Lending Act, 15 U.S.C. § 1601 et seq.

16.     The purpose of the FCBA is to protect consumers from unfair billing practices and to provide a mechanism for addressing billing errors in "open end" credit accounts, i.e., credit card and charge card accounts.

17.     Disputes made under the FCBA by consumers typically involve fraudulent or unauthorized purchases, or authorized charges in which product or service purchased was not as described.

18.     The FCBA applies only to disputes concerning open-ended lines of credit – credit cards and charge cards – and excludes closed-ended lines of credit, such as car loans, mortgages,

installment loans, student loans, monthly cell phone contracts, debt collection accounts, etc. as well as other types of non-credit debt hospital bills.

19.     The FCBA requires the credit issuer to acknowledge a consumer's dispute within 30 days, investigate the claim and, within 90 days, either make appropriate corrections to the account or send a letter to the consumer explaining why the creditor believes there was no error.

20.     Because of Experian's decades-long, uncorrected programming errors, millions of non-open-end consumer accounts which could not possibly be subject to the FCBA reflect on reports produced and sold by Experian to this day as having "NO STATUS" and "account in dispute under Fair Credit Billing Act."[1]

21.     Sometime between May 2023 and November 2023, Experian began erroneously reporting Ms. Iglesias' First Savings Bank Account tradeline as "NO STATUS". **SEE PLAINTIFF'S EXHIBIT A**.

22.     Experian's data furnisher did not report the account had "no status" nor did it report a CCC of "XF." *Id*.

23.     Experian's automated systems deleted the actual information reported by the data furnisher, and replaced the data with "NA" or "not reported" (even though the data was reported) and "NO STATUS" as default placeholders since no information remained. *Id*.

24.     Experian requires its data furnishers to adhere to Metro 2 standards for credit reporting.

25.     Metro 2 is a uniform set of reporting standards and a *lingua franca* utilized by at least five nationwide CRAs for consumer reporting.

---

[1] Until 2013, the comment used by Experian contained a typographical error and was reported as "Account in Dispute Under Fair Credit Billings (SIC) Act."

26.     In cooperation with the major CRAs, the *Consumer Data Industry Association* ("CDIA") publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. *See* http://www.cdiaonline.org/about/index.cfm?unItemNumber=515.

27.     The Metro 2 Format Task Force is comprised of representatives from CRAs such as Equifax, Experian, Innovis, and TransUnion, and it is supported by the CDIA.

28.     The Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards.

29.     The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit-risk scoring.

30.     Equifax, Trans Union, and Experian require all data furnishers, such as Vistina, to report data according to Metro 2 standards.

31.     Metro 2 standards require data furnishers to report a balance, payment history, payment status, credit limit or initial loan amount, payment terms, minimum payment, and account type.

32.     Experian warns its furnishers of information that failure to comply with Metro 2 standards will result in the deletion of the relevant tradelines from Experian's files; as such, Experian should have systems in place designed to detect and remove accounts which do not comply with Metro 2.

33.     Yet, as the millions of tradelines currently reporting with no balance, payment history, payment status, credit limit or initial loan amount, payment terms, minimum payment, or account type, and a payment status of "NO STATUS" prove, Experian employs no such systems whatsoever in its warnings to data furnishers that it will delete non-conforming tradelines.

**Experian Reports Loan as Having "NO STATUS"**

34.    Around May 2019, Ms. Iglesias obtained a loan from First Savings Bank ("First Savings").

35.    First Savings reported the account as having an initial loan amount, the terms of the loan, an account type, the current balance, and the monthly payment amount.

36.    Around May 2023, Ms. Iglesias disputed the tradeline to Experian.

37.    Experian, upon receipt of Ms. Iglesias' dispute, sent First Savings an *Automated Consumer Dispute Verification* Request ("ACDV") through a system known as e-OSCAR, requesting that First Savings make a reasonable investigation into the dispute.

38.    First Savings responded to the ACDV with an unknown change to its reporting; Ms. Iglesias never learned of the dispute results because Experian's decades-old, unfixed glitch effected the Vistana tradeline and resulted in all of her positive payment history to be deleted, along with the balance, monthly payment, recent payment amount, account type, account terms, and payment status as well. *Id.*

39.    Another glaring error based on this glitch – the computerized insertion of the "XF" CCC code ("Account in dispute under Fair Credit Billing Act") also populated to the tradeline.

40.    An installment loan is *not* an open-ended account, nor would Experian have any reason to believe it could possibly be, and thus has no relationship to the FCBA whatsoever.

41.    More importantly, First Savings ***did not report*** the "XF" CCC; the code was unilaterally added by Experian.

42.    In addition to notifying the furnisher of information concerning a consumer dispute of accuracy, the FCRA also requires that a CRA conduct its own reasonable investigation of a consumer dispute; see 15 U.S.C. § 1681i.

43.     Ms. Iglesias does not know if First Savings did – or did not – make a reasonable investigation into her dispute, since the true results were never provided to her.

44.     However, Experian's own parallel investigation was unreasonable, since it deleted Ms. Iglesias' positive payment history, balance, monthly payment, recent payment amount, account type, account terms, and payment status, replacing it with clearly-false information ("not reported") and a CCC which could not even potentially apply to an installment loan ("Account in dispute under Fair Credit Billing Act").

45.     Since Experian has been aware of this problem for at least 20 years[2], and, to this day, has failed to correct it, Experian's failure to conduct a reasonable investigation was willful as well as reckless.

46.     After Ms. Iglesias' dispute was "resolved" in May 2023, Experian's automated systems then compounded the glitch by not incorporating any new data furnished by First Savings, resulting in Ms. Iglesias' account being "frozen in time" with a status of "NO STATUS" and all other relevant information removed, including any payment history. *Id.*

47.     No procedure even remotely approaching the edge of "reasonable" would allow for an account to report with "NO STATUS", in dispute under the FCBA, and without any other relevant payment data, despite monthly reports to the contrary being made by First Savings.

48.     The FCRA is clear in its requirement that Experian, as a CRA, is required to prepare accurate reports:

> Accuracy of Report.   Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  *15 U.S.C. §1681e(b).*

---

[2] See, e.g., *Gore v. Experian Information Solutions, Inc.*, Civil No. 3:03-CV-2949-H (N.D. Tex. Sep. 7, 2004) (consumer complains of collection account from debt buyer reporting with "No Status," and "in dispute under Fair Credit Billing Act.") after August 2002 dispute.

49.     Experian was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Iglesias.

50.     Experian has sold dozens of reports concerning Ms. Iglesias to various creditors and potential creditors, all of which claim no payment history for her loan exists, that the status is "NO STATUS" and that the account is still, as of the date of this filing, "in dispute under Fair Credit Billing Act."

51.     Experian failed to ensure maximum possible accuracy when it reported information with "obvious logical inconsistencies." Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 52 (2011) ("A CRA must maintain procedures to avoid reporting information with obvious logical inconsistencies, such as a credit account opened when the consumer was known to be a minor.").

52.     Even assuming, *arguendo*, Experian had some reason to believe the FCBA applied to an installment loan, the FCBA requires disputes to be resolved in a maximum of 90 days; the "account in dispute under Fair Credit Billing Act" has appeared on Ms. Iglesias' report for at least seven months.

53.     On its face, Experian's current policies do not reasonably ensure the "maximum possible accuracy" of credit reports produced, despite being required to do so under the FCRA, 15 U.S.C. § 1681e(b), since Experian is well aware that replacing actual information reported by a furnisher with default values like is "NO STATUS" and "account in dispute under Fair Credit Billing Act" all but guarantees inaccurate reports.

54.     Experian's decades-long knowledge of these errors and its firm refusal to invest the money required to correct whatever software errors cause the problem warrants an award of punitive damages.

55.     As a result of Experian's failure to prepare reports utilizing procedures to ensure maximum possible accuracy, Ms. Iglesias has suffered an impaired ability to obtain credit and services as well as economic losses and emotional distress from attempting to fix Experian's errors, wasted time, and many other actual damages.

56.     Ms. Iglesias has hired the aforementioned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## EXPERIAN'S VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

57.     Ms. Iglesias adopts and incorporates paragraphs 1 - 56 as if fully stated herein.

58.     Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Iglesias when Experian sold at least four (4) reports which contained the false and fabricated "NO STATUS" First Savings tradeline.

59.     Experian's conduct was willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy, and its policies could reasonably be foreseen to cause harm to Ms. Iglesias.

60.     As a result of its conduct, Experian is liable to Ms. Iglesias pursuant to the FCRA for the greater of Ms. Iglesias' actual damages or statutory damages of up to $1,000 for *each occurrence*, per 15 U.S.C. § 1681n.

61.    Alternatively, Experian's conduct was the result of negligence and Experian is liable to Ms. Iglesias for her actual damages per 15 U.S.C. § 1681o.

**WHEREFORE,** Ms. Iglesias respectfully requests this Honorable Court enter judgment against Experian for:

a.    The greater of Ms. Iglesias' actual damages or statutory damages of **$1,000** per incident (for a total of **$4,000,** based solely upon information known at the time of filing), pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Ms. Iglesias' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

62.    Ms. Iglesias hereby incorporates paragraphs 1 – 56 as if fully stated herein.

63.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into a dispute of the First Savings tradeline by Ms. Iglesias, since any reasonable investigation could not have concluded the account had "NO STATUS" or any other relevant information reported and was in dispute under the FCBA, especially when contrary information was reported directly by the data furnisher.

64.    Experian's conduct was a result of its regular policies and procedures, which frequently result in its automated systems deleting the actual reported data and inserting default, placeholder information which, as in the instant matter, is often nonsensical.

65.     Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Iglesias.

66.     Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Iglesias for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

67.     Alternatively, Experian's conduct was the result of negligence, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Iglesias for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Iglesias respectfully requests this Honorable Court to enter judgment against Experian for:

a.      The greater of statutory damages of $1,000 per incident or Ms. Iglesias' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Iglesias' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.      Such other relief that this Court deems just and proper.

## COUNT III
## <u>VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(6)(A)</u>

68.     Ms. Iglesias hereby incorporates paragraphs 1 – 56 as if fully stated herein.

69.     Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to provide the <u>actual</u> results of First Savings' investigation into a dispute of its reported information by Ms. Iglesias,

instead replacing the *actual results* with nonsense, default values like "NO STATUS" and that the account was in dispute under the FCBA, when this information was not in any way indicative of the dispute results furnished to Experian by First Savings.

70.     Experian's conduct was a result of its regular policies and procedures, which frequently result in its automated systems deleting the actual reported data and inserting default, placeholder information which, as in the instant matter, is often nonsensical.

71.     As a result of these policies, many consumers, including Ms. Iglesias, receive dispute results which are devoid of the actual information reported by a creditor and consist only of default, placeholder data.

72.     Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Iglesias.

73.     Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Ms. Iglesias for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

74.     Alternatively, Experian's conduct was the result of negligence, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Ms. Iglesias for her actual damages, as well as her reasonable attorney's fees, and costs.

**WHEREFORE,** Ms. Iglesias respectfully requests this Honorable Court to enter judgment against Experian for:

a.     The greater of statutory damages of $1,000 per incident or Ms. Iglesias' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Ms. Iglesias' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.      Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Iglesias hereby demands a trial by jury on all issues so triable.

Respectfully submitted on February 6, 2024, by:

**SERAPH LEGAL, P. A.**

/s/ *Christian E. Cok*
Christian E. Cok
FL Bar No.: 1032167
CCok@Seraphlegal.com
Tel: 813-321-2349
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Fax: 855-500-0705
*Lead Attorney for Plaintiff*

## EXHIBIT LIST

A      Ms. Iglesias' Experian Consumer Disclosure, November 14, 2023, First Savings Tradeline Showing "No Status" - Excerpt

Page **13** of **15**

# PLAINTIFF'S EXHIBIT A
## Ms. Iglesias' Experian Consumer Disclosure, November 14, 2023
## First Savings Tradeline Showing "No Status" - Excerpt



# PLAINTIFF'S EXHIBIT A
## Ms. Iglesias' Experian Consumer Disclosure, November 14, 2023
## First Savings Tradeline Showing "No Status" - Excerpt



| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| CCS/FIRST SAVINGS BANK | | Not reported | 05/2019 | NO STATUS |

| | Terms | Credit limit or original amount | Date of status | Comment |
|---|---|---|---|---|
| 500 E 60TH ST N SIOUX FALLS, SD 57104 888 469 0291 **Address identification number** 006 3712083 | Not reported | Not reported **High balance** Not reported **Monthly payment** Not reported | Date Not Reported **First reported** Date Not Reported **Responsibility** Individual | Account in dispute under Fair Credit Billing Act. **Reinvestigation information** This item was updated from our processing of your dispute in May 2023. |

Page **15** of 15